UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICKI STORK,

      Plaintiff,

v.                             Case No:   2:15-cv-331-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Vicki Stork's Complaint (Doc. 1) filed on June 1, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

        **A.  Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### B.  Procedural History

On March 10, 2008, Plaintiff filed applications for disability insurance benefits and supplemental security income asserting an onset date of March 24, 2007.  (Tr. at 338, 342).  Plaintiff's applications were denied initially on May 8, 2008 and on reconsideration on July 9, 2008.  (Tr. at 170-73).  Hearings were initially held before an Administrative Law Judge ("ALJ") Scott A. Tews on March 17, 2010 and July 23, 2010.  (Tr. at 126-45, 146-69).  ALJ Tews issued an unfavorable decision on August 13, 2010.  (Tr. at 174-93).  On July 16, 2012, the Appeals Council granted Plaintiff's request for review of the ALJ's decision, vacated the hearing decision, and remanded the case for reconsideration of medical evidence.  (Tr. at 194-98).  An additional hearing was held before ALJ M. Dwight Evans on July 1, 2013.  (Tr. at 33-101).  ALJ Evans found Plaintiff not to be under a disability from March 24, 2007 through the date of the decision.  (Tr. at 26).

On April 17, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on June 1, 2015.  Defendant filed an Answer (Doc. 14) on September 8, 2015.  Both parties filed memoranda in support of their positions.  (Docs. 23, 24).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 18).  This case is ripe for review.

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891

(11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must

determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in

20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) can

perform other work of the sort found in the national economy.  *Packer*, 542 F. App'x at 891

(citing 20 C.F.R. § 404.1520; *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004)).

The claimant has the burden of proof through step four and then the burden shifts to the

Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2

(11th Cir. 2013).

　　　　In this case, the ALJ found that Plaintiff met the insured status requirements through

December 31, 2012.  (Tr. at 16).  At step one of the sequential evaluation, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since March 27, 2007, the alleged onset

date.  (Tr. at 16).  At step two, the ALJ found that Plaintiff suffered from the following severe

impairments:  headaches, left shoulder pains, left arm pains, back pains, and status-post breast

cancer removal.  (Tr. at 16).  At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 20).

　　　　Based on the evidence, the ALJ determined that Plaintiff had the residual functional

capacity ("RFC") to

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

lift and carry up to twenty pounds frequently (between one-third and two-thirds of the workday) with her right (dominant) hand and up to fifty pounds occasionally (up to one-third of the workday) with her right hand.  With her left (non-dominant) hand, claimant can frequently lift up to ten pounds and occasionally lift up to twenty pounds.  Claimant can sit for four hours and stand or walk for two hours without interruption.  Claimant can sit, stand, or walk for up to six hours in an eight-hour day.  Claimant's right hand can be used frequently for all activities such as reaching overhead, reaching in all directions, handling, fingering, feeling, pushing, and pulling.  Claimant's left hand may only be used occasionally for reaching overhead but she may frequently reach in all other directions, handle, finger, feel, push, or pull.  Pushing and pulling are limited bilaterally to the extent of claimant's ability to lift and carry.  Claimant's feet can be used frequently for the operation of foot controls.  Claimant can frequently climb ramps and stairs or balance.  Claimant may occasionally stoop, kneel, crouch, or crawl.  Claimant should avoid climbing ladders or scaffolds.  Claimant can frequently be exposed to humidity and wetness, dusts, odors, fumes, pulmonary irritants, extreme heat, and vibration.  Claimant is limited to occasional exposure to unprotected heights, moving mechanical parts, and extreme cold.  Claimant may only occasionally be required to operate a motor vehicle.  Claimant may be exposed to moderate noise conditions such as in an office.  With regard to activities of daily living, claimant can perform shopping, traveling without assistance, walking a block at a reasonable pace, using public transportation, climbing stairs at reasonable pace with the use of a single handrail, feeding herself and preparing simple meals, taking care of her personal hygiene, and handling or sorting paper files.

(Tr. at 20-21).

At step four, the ALJ determined that Plaintiff is able to perform her past relevant work as a cashier/checker, cashier, retail store manager, sales person, and sales clerk.  (Tr. at 24).  The ALJ stated "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)."  (Tr. at 24).  The ALJ stated that "[t]he vocational expert testified that a hypothetical person with the residual functional capacity outlined above would be able to perform the jobs of cashier/checker, cashier, and sales clerk as generally performed, and retail store manager and sales person as performed by the claimant."  (Tr. at 24).  Thus, the ALJ determined that "in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed."  (Tr. at 24).

Additionally, even though the ALJ determined that Plaintiff could perform her past relevant work, the ALJ made alternative findings for step five. (Tr. at 24-25). The ALJ stated that "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." (Tr. at 25). The vocational expert ("VE") testified that, even with additional limitations inquired about by the ALJ, an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as:

1. Receptionist, DOT #237.367-038, which is performed at the sedentary level, has an SVP of 4

2. Typist, DOT #203.582-066, which is performed at the sedentary level, has an SVP of 3

3. Order Clerk, DOT #249.362-026, which is performed at the sedentary level, has an SVP of 4

(Tr. at 25).[2]

Moreover, the ALJ determined that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*. (Tr. at 25). Based on the testimony of the VE, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 25). Therefore, the ALJ stated that a finding of "not disabled" was appropriate. (Tr. at 25). The ALJ concluded that Plaintiff was not under a disability from March 24, 2007, through the date of the decision. (Tr. at 26).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code.

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Richardson*, 402 U.S. at 401; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as the finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

### II.   Analysis

Plaintiff argues two issues on appeal:

1. The Administrative Law Judge erred by substituting his opinion for expert medical opinion evidence.

2. The Administrative Law Judge relied on a response from a vocational expert to incomplete [sic] hypothetical.

(Doc. 14 at 5-13).  The Court addresses each of these issues below.

### A.  Incomplete Hypothetical

Plaintiff argues that "[a]n ALJ must pose a hypothetical question to the vocational expert which comprehensively described the claimant's impairments."  (Doc. 23 at 11 (citing *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985)).  Defendant, however, argues that "the ALJ's hypothetical question to the VE encompassed all the limitations the ALJ included in his RFC assessment."  (*Id.* (citing Tr. at 20-21, 91-94)).  Thus, Defendant argues that "the ALJ properly relied on the VE's testimony, which provided substantial evidence in support of his determinations."  (Doc. 24 at 16).

Upon review, Defendant is correct that the ALJ's hypothetical question to the VE included all of the limitations that the ALJ included in his RFC assessment.  (*See* Tr. at 20-21, 91-94).  Thus, the ALJ's hypothetical to the VE could only be incomplete if there are additional limitations that the ALJ should have included in his RFC assessment.  Accordingly, if the ALJ's RFC assessment is supported by substantial evidence, then the hypothetical is not incomplete and there is no error.  *See Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) for the proposition that "[t]he ALJ is not required to include findings in a hypothetical to a vocational expert that the ALJ has found to be unsupported").

Moreover, as will be explained in greater detail below, the Court finds that (1) the ALJ's RFC assessment, including his review of the medical opinion evidence, is supported by substantial evidence, and (2) Plaintiff has not met her burden of proving she is disabled.  Thus, the ALJ did not err by failing to include additional limitations in his hypothetical to the VE.

## B.  The ALJ's Review of the Medical Opinion Evidence

The Court next discusses the ALJ's review of the medical opinion evidence of record.

### i.  The Parties' Arguments

Plaintiff argues that it is apparent that the ALJ "arrived at the physical residual functional capacity based on his own interpretation of medical data, rather than relying on medical opinion evidence." (Doc. 23 at 10).  Plaintiff argues that "[a]lthough an Administrative Law Judge may choose between conflicting medical opinion evidence, it is improper to disregard all medical opinion evidence and instead substitute his opinion." (*Id.*).  Specifically, Plaintiff points to the ALJ's discussion regarding the opinions of Nancy Kelly, Psy.D. and Eshan Kibria, M.D.  (*Id.* at 8-9).  Plaintiff argues that, if the ALJ had sufficient medical opinion evidence upon which to base his decision without the need for psychological or physical evaluations, then he would not have expended taxpayer dollars for frivolous and unnecessary examinations.  (*Id.* at 9).  Plaintiff argues that the ALJ had the ability to verify the mental and physical examinations but did not do so.  (*See id.* at 10).  Instead, Plaintiff argues that the ALJ arrived at the mental and physical RFC findings based upon his own interpretation of medical data.  (*Id.*).  Plaintiff argues that "[a]bsent contradictory medical opinion evidence, the opinions of the medical consultants should be accepted as a matter of law." (*Id.*).

Defendant disagrees and argues that substantial evidence supports the ALJ's assessment of the medical evidence.  (Doc. 24 at 7).  Defendant argues that "the ALJ properly evaluated the one-time consultative examining doctors' (Nancy Kelly, Psy.D. and Eshan Kibria, M.D.) opinions." (*Id.*).  Further, Defendant argues that "the opinion of a one-time examining doctor is not entitled to any deference or special consideration." (*Id.* (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Eyre v. Comm'r of Soc. Sec.*, 586 F. App'x 521, 523

(11th Cir. 2014); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 878 (11th Cir. 2013); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004))).  Thus, Defendant argues that because Dr. Kelly and Dr. Kibria were one-time consulting examining doctors, "their opinions were not entitled to any deference or special consideration."  (*Id.* at 7-8).

Furthermore, Defendant argues that the ALJ properly afforded the correct weight to Dr. Kelly's and Dr. Kibria's opinions.  (*Id.* at 8-16).  Defendant argues that the ALJ "properly assessed Drs. Kelly and Kibria's opinions and afforded their opinions weight, in accordance with agency regulations and rulings . . . ."  (*Id.* at 12).  Defendant also argues that Plaintiff cites no record facts or legal authority for her contention that "[a]bsent contradictory medical opinion evidence, the opinions of the medical consultants should be accepted as a matter of law."  (*Id.*).

Moreover, Defendant argues that Plaintiff's argument that "the ALJ could have obtained additional information regarding Drs. Kelly and Kibria's opinions is unavailing."  (*Id.* at 13).  Defendant argues that "there is nothing in the record to suggest the ALJ lacked sufficient information to decide Plaintiff's claim" and that Plaintiff, not the ALJ, had the burden to produce evidence showing how Claimant's impairments affected her functioning during the alleged period of disability."  (*Id.* at 13-14).

Finally, Defendant argues that "Plaintiff's argument suggesting the ALJ, in his RFC assessment, substituted his own opinion for those of the medical sources is without merit."  (*Id.* at 14 (internal citations omitted)).  Defendant argues that the ALJ "considered the overall evidence" and "properly assessed and afforded weight to the medical opinions of two, one-time examining medical sources and properly assessed Plaintiff's RFC . . . ."  (*Id.* at 15-16).

*ii.  Legal Standard*

Medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  For treating physicians, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Court notes, however, that the medical opinions of non-treating physicians and one-time examiners are not entitled to any special deference.  *See McSwain v. Bowen*, 814 F.3d 617, 619 (11th Cir. 1987).

Nevertheless, an ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  To evaluate any medical source, an ALJ must use the same criteria, whether the medical source is treating or non-treating, considering the following elements:  "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization."  *Id*. (citations omitted).

An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).  However, the ALJ must "state with particularity the weight he gave the different medical opinions and the reasons therefor."  *Id.* (quoting *Sharfarz*, 825 F.2d at 279).  In situations where an ALJ "articulates specific reasons for failing to

accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

### iii.   Analysis

In this case, the record is clear that the ALJ stated with particularity the weight he gave the medical opinions of Dr. Kelly and Dr. Kibria and the reasons therefor.  *See Lacina*, 606 F. App'x at 526.  Moreover, the ALJ articulated specific reasons for failing to accord the opinions of Dr. Kelly and Dr. Kibria controlling weight, and those reasons are supported by substantial evidence.  *See Poellnitz*, 349 F. App'x at 502.  Thus, there is no reversible error.  *See id.*

### 1.   The ALJ's Review of Dr. Kelly's Medical Opinion

As to Dr. Kelly, the ALJ described Dr. Kelly's examination and findings.  (Tr. at 19).  The Court notes that Plaintiff stated that "[f]or the sake of brevity and economy, the statements of the testimony and of the documentary evidence as set forth in the ALJ's decision (T. 11-32) are accepted by the Plaintiff and incorporated, as if fully presented herein, except as specifically alluded to, excepted, or expanded upon, below."  (Doc. 23 at 4).  Nevertheless, as Defendant points out, "Plaintiff did not 'allude to, except, or expand upon' any of the ALJ's above statements. . . ."  (Doc. 24 at 9-10).  Thus, Defendant is correct that, on appeal, "Plaintiff does not object to the ALJ's explanation of Dr. Kelly's examination."  (*See id.* at 8).

The ALJ stated that "Dr. Kelly's opinions regarding the claimant's mental functioning are given *no weight* as the totality of the medical record contradicts Dr. Kelly's findings and the claimant's subjective reports are not credible to the extent that they conflict directly with the contemporaneous medical observations over time."  (Tr. at 23 (emphasis added)).  Thus, the specific reasons given by the ALJ for affording Dr. Kelly's opinion no weight are (1) the

"totality of the medical record contradicts Dr. Kelly's findings" and (2) "the claimant's subjective reports are not credible to the extent that they conflict directly with the contemporaneous medical observations over time."  (Tr. at 23).

On the first point, the ALJ noted that, in March 2013, Dr. Kelly's examination found Plaintiff "to have significant anxiety and mental health symptoms."  (Tr. at 23).  Nevertheless, the ALJ found that "the indications from this examination are simply not credible as the weight of the entire record contradicts Dr. Kelly's findings, not only records dating back several years, but contemporaneous medical treatment notes from Drs. Kibria and Esch as well."  (Tr. at 23). In reviewing the medical records regarding Plaintiff's alleged mental impairments, the ALJ stated:

> Regarding the claimant's alleged mental impairments, the undersigned also finds that the claimant is not as limited as is alleged.  In 2008, examination showed claimant's mood and affect to appear appropriate.  In 2009, claimant reported living a moderately active lifestyle and denied depression or anxiety.  In 2010, claimant again denied difficulties with depression, anxiety, or experiencing any symptoms. Claimant sought and received no mental health treatment.  Claimant reported living amicably with others and having good relationships with peers, coworkers, and supervisors.  She had a boyfriend and got along well with her family.  She showed good recall of recent and remote events and appeared to have no difficulty with memory.  Notably, claimant appeared to attempt to manipulate the outcome of the examination by asking the examiner to indicate that she has "no memory".  This manipulation further suggests that the claimant is not as limited as is alleged and that her subjective reports are not credible.  Claimant indicated that she is able to initiate and maintain friendships.  She visits with friends and talks with neighbors actively.  She spends her days watching television, preparing simple meals, and housecleaning.  On multiple examinations in 2013, claimant's understanding, memory, concentration, social interaction, and adaptation appeared intact.  She further denied depression or anxiety.

(Tr. at 23).

A review of the medical records above supports the ALJ's contention that the "totality of the medical record contradicts Dr. Kelly's findings."  (*See* Tr. at 23).  For instance, in 2008, the medical record, in fact, shows that Plaintiff's mood and affect were appropriate.  (Tr. at 482).  In

2009, the medical records show that Plaintiff reported a moderately active lifestyle and that she denied depression, anxiety, and suicide attempts.  (Tr. at 532).  In 2010, the medical records show that Plaintiff "denied difficulties with depression, anxiety, or experiencing any symptoms." (Tr. at 23 (citing Tr. at 554)).  Further, the ALJ's description of the 2010 medical records is accurate.  (*See* Tr. at 23 (citing Tr. at 554-58)).  Finally, medical records from 2013 indeed show that "claimant's understanding, memory, concentration, social interaction, and adaptation appeared intact" (Tr. at 577) and that Plaintiff "denied depression or anxiety" (Tr. at 654-66, 709-38, 740-71).  Thus, these records, which span over five years, provide substantial evidence contradicting Dr. Kelly's findings that Plaintiff has "significant anxiety and mental health symptoms."  (*See* Tr. at 23).  The Court, therefore, finds that the ALJ's conclusion that the totality of the medical evidence does not support Dr. Kelly's findings is supported by substantial evidence.

Additionally, the ALJ's second reason for giving Dr. Kelly's opinion no weight is that "the claimant's subjective reports are not credible to the extent that they conflict directly with the contemporaneous medical observations over time."  (Tr. at 23).  In fact, the ALJ specifically found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (Tr. at 22).  Upon review of the medical records cited above, the ALJ's finding that Plaintiff was not entirely credible is supported by substantial evidence because the contemporaneous medical observations over time contradict Plaintiff's subjective reports.

Upon consideration, the Court finds that both reasons given by the ALJ for affording Dr. Kelly's medical opinion no weight are supported by substantial evidence.  *See Poellnitz*, 349 F.

App'x at 502.  Thus, the ALJ did not err by affording Dr. Kelly's medical opinion no weight. *See id.*

Furthermore, the ALJ's citations to the record above also support the ALJ's RFC findings as to Plaintiff's mental impairments.  It is clear that the ALJ's RFC findings as to Plaintiff's mental impairments are based on substantial medical evidence of record.  Accordingly, the Court finds that the ALJ's RFC findings as to Plaintiff's mental impairments are supported by substantial evidence and, therefore, the ALJ did not err as to those findings.  *See Barnes*, 932 F.2d at 1358.

### 2.   The ALJ's Review of Dr. Kibria's Medical Opinion

As to Dr. Kibria, Plaintiff states in her Memorandum that "[f]or the sake of brevity and economy, the statements of the testimony and of the documentary evidence as set forth in the ALJ's decision (T. 11-32) are accepted by the Plaintiff and incorporated, as if fully presented herein, except as specifically alluded to, excepted, or expanded upon, below." (Doc. 23 at 4).  Nevertheless, Defendant is correct that "Plaintiff did not 'allude to, except, or expand upon' any of the ALJ's" statements.  (Doc. 24 at 12).  Thus, Plaintiff did not object to the ALJ's explanation of Dr. Kibria's examination on appeal.  (*See id.*).

The ALJ stated that "Dr. Kibria's opinion finding the claimant to be capable of less than the full range of medium work is given some weight however the totality of the medical record suggests that the claimant is not as limited as was indicated by Dr. Kibria." (Tr. at 23).  The ALJ further stated that "Dr. Kibria's opinion is of limited value as he was only a one time examining physician" and that "[t]he combined record of the claimant's treatment received from several doctors suggested different limitations within a similar range."  (Tr. at 23).  Thus, the reasons given by the ALJ for only giving "some weight" to Dr. Kibria's opinion are (1) the totality of the

medical record suggests that Plaintiff is not as limited, (2) Dr. Kibria was only a one-time examining physician, and (3) the combined record of Plaintiff's treatment received from several doctors suggested different limitations within a similar range.  (Tr. at 23).

In evaluating these reasons, the Court first notes that Dr. Kibria, as a one-time examining physician, is not entitled to any special deference.  *See McSwain*, 814 F.3d at 619.  Thus, the Court finds that Dr. Kibria's opinion could be afforded less weight for this reason.

Additionally, the Court further notes that the ALJ specifically evaluated the medical records regarding Plaintiff's physical limitations in the RFC analysis.  (Tr. at 22-23).  The ALJ stated, "[i]n terms of the claimant's alleged physical impairments, the longitudinal medical record suggests that the claimant is not as limited as is alleged."  (Tr. at 22).  On this point, the ALJ stated:

> Claimant's subjective reports of pain are not supported by substantial medical evidence, are contradicted by numerous clinical and diagnostic examinations, and appear intermittent and requiring only conservative therapies throughout the record. While claimant alleges severe back and arm pains and limitations, MR of the lumbar spine from April 2007 was unremarkable but for a small disc protrusion marginally encroaching into the right neural foramen at L4-5.  No nerve compression was observed.  Claimant's reported symptoms of radiating pain on her left were not supported at all by the objective medical evidence.  Physical examination showed no point tenderness and good lower extremity strength. Straight leg raising was negative.  Notably in spring 2007, claimant noted having no other complaints and did not report headache, mental, or arm difficulties.  In May, examination showed normal neurological function including gait, strength, sensation, and reflexes.  X-ray appeared essentially normal.  Thereafter in March 2008, claimant reported that her back condition had improved.  Her gait and station were normal.  While she complained at this time of shoulder and arm pains, diagnostic imaging was unremarkable.  Claimant's shoulder range of motion improved with treatment and conservative care was recommended.  Claimant did not follow up again until September 2009 at which time she reported a new onset of shoulder pain three months earlier.  Claimant denied numbness, tingling, or weakness.  Again, conservative physical therapy was recommended to the claimant and again the claimant was generally non-compliant.  Throughout this period, claimant's headaches appeared well controlled with Topamax use as prescribed.  In April 2011, claimant felt well enough to attempt to run for exercise.  She denied any back pain or injury at this time.  DVT study and leg examination showed no

evidence of swelling despite claimant's reports of diffuse leg pains.  In 2012 and
into 2013, claimant's breast cancer was in remission and she denied headache or
other symptoms.  Examination showed a full range of motion in claimant's upper
and lower extremities, she appeared well clinically and conservative therapies were
again recommended for left sided tenderness as no clear etiology could be found.
In March 2013, claimant reported atypical shoulder pains and limitations but was
observed with normal muscle bulk and tone and used her left arm and hand to blow
her nose while in the office.

(Tr. at 22-23).  The ALJ concluded that "[a]ll of the foregoing tend to suggest that the claimant is

not as limited as is alleged."  (Tr. at 23).

The ALJ's review of Plaintiff's medical records as to Plaintiff's physical impairments

spans a six-year time period.  A review of these medical records shows that the ALJ's

characterizations of those records are supported by substantial evidence.  For instance, the MR of

the lumbar spine was, in fact, unremarkable but for a small disc protrusion marginally

encroaching into the right neural foramen at L4-5.  (Tr. at 465-466).  Additionally, in 2011, the

records show that Plaintiff attempted to run for exercise.  (Tr. at 688).  Further, the Court finds

that these medical records support the ALJ's conclusion that the "totality of the medical record

suggests that the claimant is not as limited" as Dr. Kibria indicated.  (*See* Tr. at 23).  In fact, the

records largely show that conservative care was suggested and that Plaintiff was not as limited as

alleged.

Moreover, the above records were obtained from various doctors, including Dr. Esch, Lee

Memorial Health System, and Dr. Yuvienco.  These records do not contradict the ALJ's RFC

assessment.  (*See* Tr. at 20-24).  Thus, the Court finds that a review of these records supports the

ALJ's conclusion that the combined record of Plaintiff's treatment received from several doctors

only suggested different limitations within a similar range.  (Tr. at 23).

Upon consideration, the Court finds that ALJ articulated specific reasons for failing to

accord the opinion Dr. Kibria controlling weight and that these reasons are supported by

substantial evidence.  *See Poellnitz*, 349 F. App'x at 502.  Thus, there is no reversible error on this ground.  *See id.*

Furthermore, the ALJ's citations to the record above also support the ALJ's RFC findings as to Plaintiff's physical impairments.  It is clear that the ALJ's RFC findings as to Plaintiff's physical impairments are based upon substantial medical evidence of record.  Accordingly, the Court finds that the ALJ's RFC findings as to Plaintiff's physical impairments are supported by substantial evidence and, therefore, the ALJ did not err as to those findings.  *See Barnes*, 932 F.2d at 1358.

Finally, as in all cases, Plaintiff bears the burden of proving that she is disabled.  *See Hines-Sharp*, 511 F. App'x at 915 n.2.  Here, Defendant is correct that Plaintiff cites no record facts or legal authority for her contentions that the opinions of Dr. Kelly or Dr. Kibria should be accepted as a matter of law.  (Doc. 24 at 12).  Furthermore, while Plaintiff argues that the ALJ does not point to any medical opinion evidence in the record setting forth Plaintiff's mental and physical limitations, the record nevertheless demonstrates that the ALJ's RFC findings were based on substantial medical evidence of record.  (*See* Tr. 16-20).  Regardless, Plaintiff cites no record facts to demonstrate that the ALJ should have made some other determination based on the medical record.  Thus, Plaintiff has failed to meet her burden of proving she is disabled.  *See Hines-Sharp*, 511 F. App'x at 915 n.2.

In this case, the Court finds that the ALJ applied the correct legal standard for his assessments of the doctors' medical opinions, *see McRoberts*, 841 F.2d at 1080, and that the ALJ's findings regarding those doctor's medical opinions are supported by substantial evidence, *see Richardson*, 402 U.S. at 390.  Moreover, the ALJ cited specific medical records and Plaintiff's testimony in making his RFC assessment of Plaintiff.  The Court, therefore, finds that

the ALJ's decision is supported by substantial evidence and that it is decided upon proper legal standards.

## II.      Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and is decided upon proper legal standards.

Accordingly, **IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 16, 2016.

_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties